IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANNE REIBSTEIN, | : | CIVIL ACTION |
| | : | NO. 09-2734 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RITE AID CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M


EDUARDO C. ROBRENO, J.                              JANUARY 18, 2011

TABLE OF CONTENTS

I.    INTRODUCTION.............................................2
II.   BACKGROUND...............................................4
      A.    Plaintiff's Complaint and Basis for Legal
            Relief.............................................4
      B.    The Proposed Settlement............................5
III.  LEGAL STANDARD...........................................8
      A.    Legal Standard for Class Certification.............8
      B.    Legal Standard for Fairness.......................10
IV.   MOTION FOR FINAL APPROVAL OF THE CLASS ACTION
      SETTLEMENT..............................................13
      A.    Class Certification...............................13
            1.    Rule 23(a)..................................13
            2.    Rule 23(b)..................................16
      B.    Fairness of the Settlement........................17
            1.    The Complexity, Expense and Likely Duration of the
                  Litigation..................................19
            2.    The Reaction of the Class to the Settlement.....19
            3.    The Stage of the Proceedings and Amount of
                  Discovery Completed.........................20
            4.    The Risks of Establishing Liability.............21
            5.    The Risks of Establishing Damages...............23
            6.    The Risks of Maintaining the Class Action Through
                  Trial.......................................25
            7.    The Ability of the Defendants to Withstand a
                  Greater Judgment............................26
            8.    The Range of Reasonableness of the Settlement Fund
                  in Light of the Best Possible Recovery.........28
            9.    The Range of Reasonableness of the Settlement Fund

         in Light of the Attendant Risks of Litigation...30
      10.   Attorneys' Fees and the Representative Plaintiff
          Award...........................................30
V.   MOTION FOR ATTORNEYS' FEES...............................34
   A.   The Nature of the Court's Review.....................35
   B.   Methods to Determine Whether to Award Attorneys'
      Fees................................................37
   C.   Application..........................................40
VI.  CONCLUSION...............................................42

## I.   INTRODUCTION

On June 16, 2009, Plaintiff Dianne Reibstein ("Plaintiff") initiated this class action suit against Rite Aid Corp. under the Fair Credit Reporting Act (the "FCRA") as amended by the Fair and Accurate Credit Transactions Act (the "FACTA"). Thereafter, Plaintiff amended her complaint to add Asteres, Inc. as a defendant.[1]  On April 28, 2010, the parties entered into a settlement agreement.  The Court preliminarily approved the parties' settlement and provisionally certified the class for settlement purposes only.  Plaintiff then moved for final approval of the class action settlement and for an award of attorneys' fees.  On August 31, 2010, the Court held a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e).

After reviewing the parties' briefing and considering the arguments advanced at the hearing, the Court finds that the settlement class meets the requirements for class certification and that the proposed settlement is fair.  In reaching this

_____

[1]   This memorandum refers to the two named defendants collectively as "Defendants."

conclusion, the Court observes that the Girsh/Prudential[2] factors
deemed instructive to the fairness inquiry largely miss the mark
in consumer cases and may imply a fairer settlement than is
warranted.

Indeed, the governing test de-emphasizes (or entirely
fails to account for) the facts most probative of fairness in
this case. In the Court's view, these facts include that: (1)
the class is to receive an award in the form of gift cards; (2)
the individual award the named plaintiff seeks is 3.75 times
greater than the maximum statutory recovery of $1,000 where she
acknowledges performing little work for the class; and (3) the
requested attorneys' fees exceed the total recovery for the
class. While some of these facts warrant close scrutiny, the
Court ultimately finds the settlement to be fair. However, the
Court concludes the individual award to Plaintiff is excessive
and must be reduced.

Thus, as set forth more fully below, Plaintiff's motion
for final approval of the class action settlement will be
granted, except that the award to Plaintiff sought by way of that
motion will be reduced. Plaintiff's motion for attorneys' fees
will also be granted.

---

[2]    See Krell v. Prudential Ins. Co. (In re Prudential Ins.
Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283 (3d
Cir. 1998); Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975).

## II. BACKGROUND

### A. Plaintiff's Complaint and Basis for Legal Relief

Plaintiff's complaint alleges Defendants violated the FCRA by failing to truncate electronic receipts in accordance with the FCRA.  The FCRA, as amended by the FACTA, provides in relevant part that, as of December 4, 2006, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction."  15 U.S.C. §§ 1681c(g)(1), (3) (2010).  Individuals who "willfully fail[] to comply" with this requirement are subject to civil liability for:

> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or . . .
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability . . . the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

In 2008, however, Congress amended the damages provision to provide a limitation on a plaintiff's potential to recover for a violation.  See Ehrheart v. Verizon Wireless, 609 F.3d 590, 598 (3d Cir. 2010) (Smith, J., dissenting) (outlining legislative development of the civil damages section of the FACTA).  Namely, it provided that "any person who printed an

- 4 -

expiration date on any receipt . . . between December 4, 2004, and June 3, 2008, but otherwise complied with [Section 1681c(g)'s requirements] . . . shall not be in willful noncompliance" such that liability could lie.  15 U.S.C. § 1681n(d).

Here, Plaintiff's complaint states a cognizable claim for damages because she seeks relief for a violation of the FACTA that occurred after June 3, 2008.  More specifically, Plaintiff avers that Plaintiff purchased medicine by credit card at a Rite Aid location on April 5, 2009 and was given a receipt that included the card's expiration date.  (Am. Compl. ¶ 23.) Plaintiff seeks to represent all individuals who were provided "receipt(s) by Defendant[s] that failed to comply with the FACTA truncation provisions" after June 3, 2008.  (Id. ¶ 44; see also id. ¶ 43.)

        B.    The Proposed Settlement

Promptly after Plaintiff filed her suit, Rite Aid "took steps to stop the practice complained of."  (Pl.'s Mot. For Final Approval of Class Action Settlement, at 5.)  On April 28, 2010, after a period of discovery, the parties entered into a settlement agreement.  The settlement agreement provides that the settlement class should be certified as follows:

        All persons who, on or after June 3, 2008 and continuing
        through June 18, 2009, made a credit card or debit card
        purchase from the pharmacy self-service dispenser at Rite Aid
        store number 1320, located at 640 Montgomery Avenue, Narberth,

Pennsylvania 19072 and whose electronically printed receipt from the dispenser contained the expiration date of the person's credit or debit card.

(Doc. no. 27, App. I.)  The settlement agreement states that, per Defendants' representations and supporting documentation, this class "consists of approximately 369 individuals who engaged in a total of approximately 2,442 credit or debit card transactions during the relevant time period." (Id.)  The parties have since clarified that the settlement class actually consists of 366 individuals.  (See, e.g., Pl.'s Additional Mem. Of Law, at 1; see also Pl.'s Mot. For Final Approval of Class Action Settlement, at 7.)

The settlement provides the proposed class members with the following benefits:

4.    Rite Aid will provide a gift card, with a value of $20.00, for each credit or debit card receipt provided to a member of the Settlement Class during the Class Period that contained the expiration date of the person's credit or debit card as reflected by Defendants' records. . . .

8.    Asteres shall pay for all costs of notice and settlement administration . . . .

9.    Rite Aid and Asteres agree that in connection with the Lawsuit, they took prompt steps to assure the cessation of the practice of providing consumers with electronically printed receipts containing the expiration date of the person's credit card or debit card at the pharmacy self-service dispenser at [the relevant Rite Aid store].

(Doc. no. 27, App. I.)  The gift cards contemplated by the settlement agreement are "subject to the same terms and conditions as a Rite Aid standard gift card." (Id.)  They

"cannot be used on items excluded by law, are not redeemable for cash, and will not be replaced if lost or stolen." (Id.) They are, however, freely transferrable, have no expiration date, and will be sent directly to class members upon approval of the settlement. (See Pl.'s Additional Mem. Of Law, at 2.)

The settlement agreement also contemplates a financial award for Plaintiff and attorneys' fees for her lawyer:

> 10. Class Counsel intends to apply to the Court for an award of attorneys' fees and out-of-pocket expenses not to exceed $65,000.00. Class Counsel also intends to apply to the Court for an award to the representative plaintiff in settlement of her individual claims and also for services performed on behalf of the Settlement Class not to exceed $3,750.00. Rite Aid and Asteres agree not to oppose the foregoing applications for attorneys' fees and expenses and individual settlement award . . . .

(Doc. no. 27, App. I.) The settlement is not contingent on these awards being approved, however. It clearly provides that "a reduction by the Court or by an appellate court of attorneys' fees and/or out-of-pocket expenses or the individual settlement award sought by the Plaintiff and Class Counsel shall not affect any of the parties' other rights and obligations under this Settlement Agreement." (Id.)

In preliminarily approving the settlement, the Court directed the parties to provide notice of the class action settlement to all members of the settlement class. Such notice was properly provided. (See docs. no. 29, 30; see also Pl.'s Mot. For Final Approval of Class Action Settlement, at 14.) No

members of the settlement class objected to the proposed

settlement. (Pl.'s Mot. For Final Approval of Class Action

Settlement, at 14.)  However, one member of the 366-person class

exercised the right to opt out of the class.  (Id.)


## III. LEGAL STANDARD

In evaluating a motion for final approval of a class

action settlement, the court must determine whether the class

action settlement is fair.  At the threshold, however, the court

must determine that certification of the proposed settlement

class is appropriate under Rules 23(a) and (b) because "[f]ederal

courts . . . lack authority to substitute for Rule 23's

certification criteria a standard never adopted—that if a

settlement is 'fair,' then certification is proper."  Amchem

Prods., Inc. v. Windsor, 521 U.S. 591, 622 (1997); see In re

Cmty. Bank of N. Va., 418 F.3d 277, 299 (3d Cir. 2005) ("[T]he

ultimate inquiry into the fairness of the settlement under Fed.

R. Civ. P. 23(e) does not relieve the court of its responsibility

to evaluate Rule 23(a) and (b) considerations.").


### A.   Legal Standard for Class Certification

Rule 23(a) provides that a class action may be

maintained only if:

(1) the class is so numerous that joinder of all members is
impracticable;

> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). Additionally, the class must fit into one of the three categories of class actions contemplated by Rule 23(b). Here, the class at issue is a so-called "damages class under Rule 23(b)(3) whereby the court "must direct to class members the best notice that is practicable under the circumstances" and afford a right to opt out from the class.[3] Fed. R. Civ. P. 23(c)(2). Rule 23(b)(3) provides a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

---

[3] Accordingly, this memorandum does "not address the application of the (b)(1) and (b)(2) requisites which, without the important right to opt out, involve different considerations." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 796 n.18 (3d Cir. 1995).

Fed. R. Civ. P. 23(b)(3).

Of course, the court's inquiry under Rule 23(a) and (b) is not exactly the same as it would be were certification not attendant to a proposed settlement.  For one, the court need not consider factors in Rule 23 that are inapplicable if the case is to settle.  <u>See</u> <u>Amchem</u>, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." (internal citation omitted)).  And, in keeping with Rule 23(e)'s policy to protect unnamed class members, the court should be particularly vigilant in determining whether to certify a class for settlement with respect to those class certification rules in Rule 23(a) and (b) that are "designed to protect absentees by blocking unwarranted or overbroad class definitions."  <u>Id.</u>

B.    <u>Legal Standard for Fairness</u>

After determining the proposed settlement class may properly be certified under Rule 23, the court must evaluate the fairness of a proposed class action settlement under Rule 23(e). <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 579 F.3d 241, 258 (3d Cir. 2009) ("'Even if it has satisfied the requirements for certification under Rule 23, a class action cannot be settled

without the approval of the court and a determination that the proposed settlement is fair, reasonable and adequate.'" (quoting Prudential, 148 F.3d at 316)). Where, as here, "settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously," the court must protect absentee class members by applying an "even more rigorous, heightened standard." In re Pet Food Prods. Liab. Litig., --- F.3d ----, 2010 WL 5127661, at *12 (3d Cir. Dec. 16, 2010) (internal marks omitted) (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3d Cir. 2004)). Ultimately, however, the question of fairness is a discretionary one committed to the district court. See Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995).

In Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit "identified certain factors which district courts may employ in informing their discretion before granting final approval to the class action settlement." Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 571 (E.D. Pa. 2001) (Robreno, J.). More recently, the Third Circuit has instructed "the district court [to] make findings as to each of the nine Girsh factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)." Pet Food Prods., 2010 WL 5127661, at *13. The Girsh factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 157.

However, in Prudential, the Third Circuit cited a "sea-change in the nature of class actions" and advised that "it may be useful to expand the traditional Girsh factors" when appropriate. 148 F.3d at 323. The factors cited by the Prudential Court are:

[T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

Id. They are "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." Pet Food Prods., 2010 WL 5127661, at *13.

With these guiding principles in mind, the Court turns to address the instant motions.

**IV.  MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

The Court begins by considering Plaintiff's motion for final approval of the class action settlement and the associated representation award to Plaintiff.  Rule 23(e) of the Federal Rules of Civil Procedure provides that "[t]he claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The purpose of this rule is "to protect the unnamed members of the class from unjust or unfair settlements." Ehrheart, 609 F.3d at 593.  Thus, before a class action suit that would bind class members is settled, the court must conduct a hearing and find the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  As discussed earlier, this requires consideration of whether class certification is appropriate for the proposed settlement class.  The Court turns to address that issue.

A.  <u>Class Certification</u>

1.  <u>Rule 23(a)</u>

In order to certify a class, Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  <u>See</u> <u>supra</u> Part III.A.  The proposed settlement class satisfies these requirements.

First, Rule 23(a)'s requirement that the class be "so

numerous that joinder of all members is impracticable" is
satisfied because the proposed settlement class in this case
constitutes 366 individuals.  See, e.g., Beck v. Maximus, Inc.,
457 F.3d 291, 294-95 (3d Cir. 2006) (discussing with approval the
district court's determination that the numerosity requirement
was satisfied by virtue of the 776 class members); see also
Eisenberg v. Gagnon, 766 F.2d 770, 785-86 (3d Cir. 1985) ("The
allegation of more than 90 geographically dispersed plaintiffs
met the numerosity requirement . . . .").

     Second, the commonality requirement is satisfied
because Defendants' practices in this case—printing the credit or
debit card expiration date on the receipts in violation of the
FACTA—were the same towards all members of the proposed
settlement class.  The class, after all, is comprised of "persons
who, on or after June 3, 2008 and continuing through June 18,
2009, made a credit card or debit card purchase from the pharmacy
self-service."  (Doc. no. 27, App. I.)  Thus, an applicable
common question is whether Defendants "willfully" violated the
FACTA under the meaning of the statute.

     Third, as is often the case, the typicality requirement
in Rule 23(a) is satisfied for the same reason the commonality
requirement is satisfied.  See In re Cmty. Bank, 418 F.3d at 303
("'The concepts of commonality and typicality are broadly defined
and tend to merge.'" (quoting Baby Neil ex rel. Kanter v. Casey,

43 F.3d 48, 56 (3d Cir. 1994))).  Namely, that the parties share

an aligned interest in recovering from Defendants for acts that

were the same towards all members of the proposed settlement

class.  See Prudential, 148 F.3d at 312 (holding typicality

requirement satisfied because "all members of the class would

need to demonstrate [a common issue]" and therefore "their

interests are sufficiently aligned").  This is particularly true

given that the typicality requirement is satisfied even where

"some members of the class may have additional state or federal

law claims, not asserted by the named plaintiffs."  Cmty. Bank,

418 F.3d at 303.

        Finally, Plaintiff is an adequate representative of the

class under Rule 23(a) because (1) Plaintiff has retained

experienced counsel; and (2) Plaintiff's interests are aligned

with those of the unnamed class members.  See id. (stating the

adequacy requirement "encompasses two distinct inquiries designed

to protect the interests of absentee class members:  'it

considers whether the named plaintiffs' interests are

sufficiently aligned with the absentees', and it tests the

qualifications of the counsel to represent the class.'" (quoting

Gen. Motors Corp., 55 F.3d at 800)).  As noted, Plaintiff has

precisely the same interests as the unnamed class members insofar

as she wants to recover from Defendants for the same wrong.  And

Plaintiff retained experienced counsel to represent her in this

regard.

　　　　　Therefore, the Court finds the proposed settlement class satisfies Rule 23(a)'s requirements.


　　　　　2.　Rule 23(b)

　　　　　In addition to the notice requirements, which were satisfied in this case, Rule 23(b) requires that "[i]ssues common to the class . . . predominate over individual issues, and the class action device must be superior to other means of handling the litigation." <u>Prudential</u>, 148 F.3d at 313-14.  Both requirements are satisfied here.  First, issues common to the class predominate over the individual claims because, as discussed in the context of Rule 23(a)'s commonality and typicality requirements, the claims common to the class are the same as those claims Plaintiff would assert individually.  Second, the class action device is a superior means of adjudicating the applicable controversy because the civil liability contemplated for violations of the FACTA is likely to be relatively small.  <u>See</u> 15 U.S.C. § 1681n(a) (allowing recovery of "actual damages sustained . . . or damages of not less than $100 and not more than $1000").  Class actions are particularly appropriate in such cases.  <u>See</u> <u>Amchem</u>, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the

incentive for any individual to bring a solo action prosecuting his or her rights." (quoting <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 344 (7th Cir. 1997))).

Therefore, the Court finds the proposed settlement class satisfies Rule 23(b)'s requirements. Finding that the proposed settlement class meets the standard for class certification articulated in Rule 23, the Court deems it appropriate to finally certify the settlement class. Having done so, the Court turns to evaluate the settlement's fairness in accordance with Rule 23(e).

B. <u>Fairness of the Settlement</u>

As set forth more fully below, the Court believes three aspects of the proposed settlement are particularly relevant to this Court's fairness analysis under Rule 23(e): (1) that class members are to receive gift cards rather than cash; (2) that the attorneys' fees sought greatly exceed the total class recovery;[4] and (3) that the class representative award is high considering the limited work performed by Plaintiff. However, although the Court believes these are the issues implicated in this case, <u>Girsh</u> has been interpreted to require the Court to consider a

---

[4] This is true even if the Court makes the generous assumption that a gift card award is equivalent in value to a cash award. At the fairness hearing, the parties admitted the class would likely have received a less generous settlement if the award was to be satisfied in cash rather than gift cards.

host of other factors alongside consideration of the <u>Prudential</u>
factors where appropriate.  <u>See</u> <u>Pet Food Prods.</u>, 2010 WL 5127661,
at *13 ("The district court must make findings as to each of the
nine <u>Girsh</u> factors in order to approve a settlement as fair,
reasonable, and adequate, as required by Rule 23(e)."); <u>id.</u>
(noting the Court should make findings as to "the <u>Prudential</u>
factors where appropriate").

        This case illustrates the difficulty of a mechanical
application of the <u>Girsh</u>/<u>Prudential</u> factors.  While many of the
factors appear to weigh in favor of approval on the surface, they
are not truly probative of the settlement's ultimate fairness.[5]
At least in a consumer case like the one before the Court,
analyzing each factor in rote fashion makes the settlement seem
fairer than it is.  In other words, applying <u>Girsh</u>/<u>Prudential</u> to
evaluate the fairness of a consumer case settlement may result in
a mirage:  a settlement that is not as favorable as it appears.
With this caution in mind, the Court turns to apply the <u>Girsh</u>
factors one-by-one before separately addressing the
representative Plaintiff's award and applicable attorneys' fees.

---

        [5]    The first and second concerns identified by the Court
are accounted for in <u>Girsh</u> and <u>Prudential</u> respectively, but the
third is not clearly covered by the factors identified in either
case.

**The Complexity, Expense and Likely Duration of the Litigation**

The first factor for consideration is the complexity, expense and likely duration of the litigation.[6]  This case is not particularly complex.  In essence, Plaintiff alleges Defendants unlawfully printed expiration dates on credit card receipts.  Defendants acknowledge doing so.  However, if this case were to go to trial, Plaintiff would bear the burden of proving that Defendants' actions were "willful."  Namely, that Defendants actions were committed knowingly or recklessly.  See Safeco Ins. Co. v. Burr, 551 U.S. 47, 56-57 (2007) (willful failure to comply can be established by a knowing or reckless violation of the statute).  As outlined further below, this would be a cumbersome burden for Plaintiff to meet in this case.  Thus, although the predicate facts are not complicated, the Court concludes that the first factor slightly favors approval of the settlement insofar as the litigation could be costly and protracted.

2.  **The Reaction of the Class to the Settlement**

The second factor to be considered under Girsh is the reaction of the class to the settlement.  This factor favors approval of the settlement because (1) only one member of the

---

[6]      Due to overlap in some respects, matters bearing on this factor are often considered a second time under the Girsh framework in evaluating the fourth factor:  the risks of establishing liability.

entire class has exercised the right to opt out following notification of the settlement terms; and (2) no class members have objected to the proposed settlement.  Although this is to be expected in a consumer case with relatively small recovery and a lack of institutional class members no matter the merits of the settlement, see Schwartz, 157 F. Supp. 2d at 580, the fact that the settlement is entirely uncontested is considered evidence of its fairness.  Cf. Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (noting that the second factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms).  The Court therefore concludes that the second factor slightly favors approval of the settlement.

3.    The Stage of the Proceedings and Amount of Discovery Completed

The third factor to be considered is the stage of the proceedings and the amount of discovery completed.  The settlement agreement was entered into on April 28, 2010.  By that point, the parties had already completed document production and verified answers to interrogatories.  The discovery showed that Rite Aid had made its other stores compliant with the FACTA as of January 2007 but had failed to make the store at issue compliant due to an apparent oversight by Rite Aid and/or Asteres.  (Pl.'s Mot. For Final Approval of Class Action Settlement, at 15.)

Thus, the discovery completed revealed that Defendants' actions might not be deemed sufficiently "willful" as to violate the statute.  <u>See</u> <u>Safeco</u>, 551 U.S. at 56-57.  With this information in hand, all parties were able to assess the strengths and weaknesses of their case.  Accordingly, the third <u>Girsh</u> factor favors approval of the settlement.  <u>See</u> <u>Bonett v. Educ. Debt Servs.</u>, No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003) (settlement favored where "[t]he parties arrived at an arms-length settlement . . . [with] a clear view of the strengths and weaknesses of their case" (internal marks omitted) (quoting <u>In re Warner Commc'ns Secs. Litig.</u>, 618 F. Supp. 735, 745 (S.D.N.Y. 1985))).

### 4.   <u>The Risks of Establishing Liability</u>

The fourth factor to consider are the risks of establishing liability.  Applied strictly, this factor has the potential to produce a result that conflicts with public policy considerations.  <u>See generally</u> <u>Scwartz</u>, 157 F. Supp. 2d at 582. Followed to its logical conclusion, this factor favors approval of class action settlements of relative little merit on the basis that, but for the settlement, the class members are likely to go uncompensated.  After all, according to this argument, any settlement of a weak or non-meritorious claim is better for the class than a loss "at the crucible of motion practice or trial."

Id.

    Given that a settlement would ordinarily result in an award of attorneys' fees and the pressure upon defendants to settle claims once a claim is certified, see Malack v. BDO Seidman, LLP, 617 F.3d 743, 755 (3d Cir. 2010) (noting that "class certification puts pressure on defendants to settle claims, even if they are frivolous"), applying the fourth factor too broadly as to promote the mantra of "any settlement is better than no settlement" provides a disincentive for counsel to screen weak claims which would be unlikely to generate attorneys' fees in a non-class action context.  This approach would offend important policy interests:  the rigorous pre-filing screening of weak claims by counsel both saves judicial resources and supports the integrity of the class action process.  Therefore, it is important to reject settlement agreements which are reached despite profound risks of establishing liability.  See Schwartz, 157 F. Supp. 2d at 582 ("[E]ven assuming that the instant claims would be denied on summary judgment or at trial, the sound alternative is not approval of an infirm compromise between the parties, but rejection of the Settlement Agreement.").

    After a careful review of the record, the Court concludes that this is not quite such a case.  While Plaintiff's likelihood of prevailing is far from certain, there is no indication this case was brought in bad faith simply to generate

attorneys' fees, or that the case is too weak to succeed under
most circumstances.  At trial, Plaintiff would bear the burden of
establishing that Defendants "willfully fail[ed] to comply" with
the requirement to not print expiration dates on credit or debit
card receipts.  15 U.S.C. § 1681n(a).  That is, that Defendants
either (1) knowingly; or (2) recklessly violated the act.  <u>See</u>
<u>Safeco</u>, 551 U.S. at 56-57.  As noted, the facts support an
argument that Defendants' failure to comply with the FACTA did
not rise to this level.  Plaintiff thus faced considerable—albeit
not insurmountable—risks in attempting to establish liability.
Based on this analysis, the fourth <u>Girsh</u> factor favors approval
of the settlement.

                    5.   <u>The Risks of Establishing Damages</u>

              The fifth factor to consider are the risks of
establishing damages.  The potential risks discussed in the
context of establishing liability apply with equal force to the
Plaintiff's risks of establishing damages.  As to this factor,
Plaintiff also faced additional challenges due to the uncertainty
surrounding the civil damages provision for FACTA violations.
Indeed, while the statute states a plaintiff can recover "any
actual damages sustained by the consumer as a result of the
failure or damages of not less than $100 and not more than
$1,000" and "such amount of punitive damages as the court may

allow," 15 U.S.C. § 1681n(a), there is—as Plaintiff points out—scant authority addressing whether the applicable damages are to be awarded on a "per person" or "per transaction" basis. However, most courts (sensibly) seem to take it as a given that damages should be awarded on a "per person" rather than a "per transaction" basis.  See Stillmock v. Weiss Markets, Inc., No. 09-1632, 2010 WL 2621041, at *5 (4th Cir. July 1, 2010) (rejecting contention damages should be assessed on a per transaction basis); Murray v. GMAC Mortg. Corp., 434 F.3d 948, 953 (7th Cir. 2006) (describing the statute to "authorize awards as high as $1,000 per person").

Here, the class is comprised of "366 member[s] . . . having engaged in 2,441 transactions."  (Pl.'s Mot. For Final Approval of Class Action Settlement, at 17.)  Thus, the statutory damages could range from either $36,600 to $366,000 or from $244,100 to $2,441,000 depending on whether damages were awarded "per person" or "per transaction."[7]  While both valuations could tenably exceed the $48,820 value to be distributed to the class under the settlement, the "per person" methodology would likely apply based on the Court's review of existing law.  Under this standard, it is possible—if not likely—that a lower value of damages would be awarded based on considerations of Defendants'

---

[7]    As mentioned, the settlement uses a "per transaction" approach awarding a gift card in the amount of $20 for each illegal receipt provided to a class member during the relevant time period.  (Doc. no. 27, App. I.)

culpability since the FACTA violation at issue appears to have been inadvertent.  Thus, the Court concludes that the fifth factor favors approval of the settlement agreement.

           6.    The Risks of Maintaining the Class Action Through Trial

The sixth factor for consideration are the risks of maintaining the class action throughout the trial.  Because "[c]lass certification is always conditional and may be reconsidered," Bonett, 2003 WL 21658267, at *6 (internal marks omitted) (quoting Saunders v. Berks Credit & Collections, Inc., No. 00-3477, 2002 WL 1497374, at *12 (E.D. Pa. July 11, 2002)), it is likely Defendants would have vigorously opposed class certification and/or sought decertification throughout the trial. The need to defend certification appears to militate in favor of approving the settlement.  However, this is true in virtually every class action suit; therefore, it should not be a basis for concluding the sixth factor favors approval.  The Court therefore looks to the likelihood of defending such challenges.  Here, the class would likely be able to withstand certification challenges. This militates against approval of the settlement under the sixth factor.  See Rosenau v. Unifund Corp., 646 F. Supp. 2d 743, 754 (E.D. Pa. 2009).  Because the facts pertinent to the sixth factor inquiry cut both ways, the Court finds the sixth Girsh factor to be neutral.

7.    The Ability of the Defendants to Withstand a
              Greater Judgment

        The seventh factor under Girsh is the ability of the

defendants to withstand a greater judgment.  The Court believes

this factor is most clearly relevant where a settlement in a

given case is less than would ordinarily be awarded but the

defendant's financial circumstances do not permit a greater

settlement.  Here, Plaintiff argues there "is no evidence of

record that Defendants are unable to withstand a greater

judgment" and that the seventh factor is therefore "neutral."

(Pl.'s Mot. For Final Approval of Class Action Settlement, at

19.)  If this were a significant issue in this case, the remedy

to this apparent evidentiary deficiency would be to require the

parties to supply such information to the Court.  See Pet Food

Prods., 2010 WL 5127661, at *13.

        However, the Court has not been presented with any

reason to believe that Defendants face any financial instability

and therefore believes this factor is largely irrelevant for the

purpose of resolving the instant motion.  To the extent a finding

on this issue is necessary, see id., the Court finds Defendants

could withstand a greater judgment.  See Lazy Oil Co. v. Wotco

Corp., 95 F. Supp. 2d 290, 318 (W.D. Pa. 1997) (noting that no

evidence was issued on the defendants' ability to withstand a

larger judgment, but presuming the defendants did and according

little weight to that fact due to risks the plaintiffs faced in

proceeding to trial), <u>aff'd</u>, 166 F.3d 581 (3d Cir. 1999).

Even under such circumstances, this factor does not necessarily militate against approval of the settlement. Some courts, for example, have accorded this factor little weight based on the unique circumstances of a given case. <u>See, e.g., id.</u> Others have concluded a settlement is fair under this <u>Girsh</u> factor because financial stability today does not ensure financial stability tomorrow.[8] <u>See Bonett</u>, 2003 WL 21658267, at *7 (noting that, although defendant is "stable today and would most likely be able to withstand a greater judgment than that offered by the proposed settlement, there are no assurances that [defendant] would continue to experience a healthy economic outlook, especially in the event that the settlement were disproved and the class action were to proceed to trial").

Consequently, the Court concludes the seventh factor is neutral. Defendants' apparent ability to withstand a greater judgment today is tempered by the always present possibility that Defendants' financial health may change.

---

[8]    While the factual premise underlying this latter reasoning is true, accepting this kind of analysis makes the seventh factor a nullity in practically every fairness evaluation. That does not mean such logic is unsound—the Court finds it to be very persuasive. It merely serves as further evidence that, in many respects, <u>Girsh</u>/<u>Prudential</u> misses the mark when treated as a one-size fits all formula for assessing fairness.

8.   The Range of Reasonableness of the Settlement Fund
     in Light of the Best Possible Recovery

The eighth factor is the range of reasonableness of the
settlement fund in light of the best possible recovery.  As
noted, the value to be distributed to the class is $48,820, while
the possible recovery could range from either $36,600 to $366,000
or from $244,100 to $2,441,000 depending on whether damages were
awarded "per person" or "per transaction."  Of course, the former
valuation is most likely the appropriate measure of damages under
the statute.  Because (1) serious questions as to liability are
presented; and (2) the applicable range of damages for a
violation of the FACTA is, at the least, subject to reasonable
debate, the settlement value in this case would clearly favor
approval of the settlement under the eighth factor were it to be
paid in cash.

Here, however, the funds at issue are to be extended to
the class in the form of "gift cards."  As a non-monetary award,
this fund "deserve[s] careful scrutiny to ensure . . . [it] ha[s]
actual value to the class."  Fed. R. Civ. P. 23, Advisory
Committee Note.  Several courts and Congress have cited concerns
about some forms of non-monetary settlement awards—most
frequently in the context of coupon-based settlements.  See,
e.g., Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d
646, 653-55 (7th Cir. 2006); see also Gen. Motors Corp., 55 F.3d
at 806-07.  Most obviously, such settlements result in "the

increased possibility that the benefits afforded to class members will never be realized, since class members are provided with a future discount on a product or service with which they were previously dissatisfied." Radosti v. Envision EMI, LLC, 717 F. Supp. 2d 37, 55 (D.D.C. 2010). For this reason and others, Congress enacted a statute governing coupon settlements and calling for judicial scrutiny of such settlements in the Class Action Fairness Act of 2005. See generally 28 U.S.C. § 1712.

Cognizant of these considerations and applying the exacting scrutiny called for, the Court finds that the eighth Girsh factor favors the settlement. In this case, the gift cards have actual cash value, are to be mailed to a class of (mostly) regular customers,[9] have no expiration date, are freely transferrable, and can be used for literally thousands of products for which ordinary consumers, including class members, have need. Cf. Fernandez v. Victoria Secret Stores, LLC, No. 06-4149, 2008 WL 8150856, at *6 (C.D. Cal. July 21, 2008) (approving settlement where class members were awarded a freely transferrable gift card). Under these circumstances, the gift cards are more like "cash" than "coupons." In fact, because the

---

[9] As noted, 366 class members engaged in a total of 2,441 transactions. Assuming each of the 366 class members engaged in the same number of transactions, each would have purchased nearly seven Rite Aid products from the pharmacy self-service dispenser over the course of a one-year period. While this assumption is imperfect, it reveals that—as a whole—the class members frequent Rite Aid and, indeed, the Rite Aid at issue in this case.

class members are likely to shop at Rite Aid again, they may even prefer the $20 gift cards to the lesser value that would have been awarded had the parties opted to provide a cash award.[10] For these reasons, the Court concludes the gift cards called for by the settlement are fair to class members, and that eighth factor favors approval.

### 9. The Range of Reasonableness of the Settlement Fund in Light of the Attendant Risks of Litigation

Finally, <u>Girsh</u> instructs that the Court is to consider the reasonableness of the settlement fund in light of the attendant risks of litigation.  As already noted, there are several risks at hand:  (1) that Plaintiff may not be able to prove wilfulness; (2) that a damages award may take into account Defendants' apparent lack of culpability; and (3) that certification would be contested throughout the proceedings. Given these risks—especially the first two—the Court finds that the ninth factor favors approval of the settlement.

### 10. Attorneys' Fees and the Representative Plaintiff Award

Having completed its analysis of the <u>Girsh</u> factors, the Court will now address the other two factors it believes to bear on the fairness of the settlement:  (1) the attorneys' fees; and

---

[10]    <u>See</u> <u>supra</u> note 4.

(2) the award to Plaintiff for representing the class. Were these issues not presented in the instant case, the Court would find the settlement to be fair based on the analysis conducted to this point. However, these factors are important considerations in evaluating a settlement's fairness because the public at large has an interest in ensuring awards and fees are equitably distributed.[11]  See generally Pet Food Prods., 2010 WL 5127661, at *20 (Weis, J., concurring in part and dissenting in part) (describing the purpose of carefully reviewing attorneys' fees); see also Gen. Motors Corp., 55 F.3d at 820 ("[W]e emphasize that the court's oversight function serves not only to detect instances of 'the actual abuse [that potential attorney-class conflicts] may cause, but also [the] potential public misunderstandings they may cultivate in regard to the interests of class counsel." (internal marks omitted) (quoting In re Agent Orange Prod. Liab. Litig., 818 F.2d 216, 225 (2d Cir. 1987))).

However, although the settlement agreement contemplates both the attorneys' fees and the representation award by providing Defendants will not contest the same, it also provides that the Court's determination as to those issues does not affect the other rights and obligations dictated by the settlement. (Id.)  Thus, to the extent the Court finds awarding the full

_____

[11]    Thus, the fact that the attorneys' fee in this case was negotiated only after a settlement was obtained on behalf of the settlement class is, in itself, insufficient to satisfy the Court of its fairness.

- 31 -

amounts sought to be problematic, it can effectively cure the
problem by limiting the recovery and attorneys' fees as
necessary.

　　　　The Court will exercise this authority as to the award
for Plaintiff for her efforts and costs in bringing the class
action.  Plaintiff asks the Court to approve an award of $3,750
which is to be paid entirely by Defendant-Asteres.  Plaintiff
acknowledges that only minimal efforts were expended in this
case, but urges that the $3,750 sought is appropriate because she
was available and willing to assist in the litigation by any
means possible.

　　　　Courts may, and often do, approve such awards to
representative plaintiffs.  See, e.g., In re CertainTeed Corp.
Roofing Shingle Prods. Liab. Litig., 269 F.R.D. 468, 486 (E.D.
Pa. 2010) (outlining the bases for awarding monetary sums to
representative plaintiffs in class action suits, and approving a
$5,000 incentive award).  Factors to be considered in ordering an
award of this sort include:

> [T]he risk to the plaintiff in commencing suit, both
> financially and otherwise; the notoriety and/or personal
> difficulties encountered by the representative plaintiff; the
> extent of the plaintiff's personal involvement in the lawsuit
> in terms of discovery responsibilities and/or testimony at
> depositions or trial; the duration of the litigation; and the
> plaintiff's personal benefit (or lack thereof) purely in his
> capacity as a member of the class.

Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 118 (E.D. Pa.
2005).

Applying these considerations to Plaintiff's case militates against awarding a high sum. Indeed, there is no evidence that Plaintiff was exposed to any personal risk or unwelcomed adversity in connection with this action. Nor was Plaintiff personally burdened by participating in the law suit. In fact, as already noted, Plaintiff admits that there was little effort or participation actually required of her.[12] Nevertheless, Plaintiff asks the Court to award an amount that is 3.75 times greater than the maximum allowable statutory recovery of $1,000.

Under these circumstances, the award requested is disproportionate to the amount of work performed and the burden undertaken by Plaintiff. Thus, after carefully considering the relevant factors and the extent to which the representative plaintiff award ultimately bears on the settlement's fairness as a whole, the Court will decline to approve the award Plaintiff seeks. Instead, the Court will approve an award of $1,000, equal to the statutory maximum recovery under the FCRA's civil damages provision.[13]

Because the question of attorneys' fees is invoked by

_____

[12] The Court does not doubt that Plaintiff was ready, willing and able to expend effort as needed, but the fact remains that she did little else other than serve as the representative plaintiff in this action and attend the fairness hearing.

[13] In accordance with the parties' settlement agreement, the additional $2,750 shall not be added to the total class recovery. (See Doc. no. 27, Exhibit A.)

way of a separate motion, the Court turns to address that issue in the following heading.  As discussed _infra_, the Court ultimately finds the attorneys' fees to be reasonable under the circumstances although it does so with some reservations.  Thus, having made the abovementioned adjustment to the representation award, the Court concludes that the settlement is fair.  It will therefore grant Plaintiff's motion for final approval of the class action settlement.

## V.    MOTION FOR ATTORNEYS' FEES

Plaintiff moves for attorneys' fees in the amount of $65,000, submitting documentation establishing that, in connection with this case, (1) David A. Searles, a partner of the firm, spent 93.20 hours at an hourly rate of $650 for a total of $60,580 in fees; (2) Elise Garber, a paralegal/law clerk of the firm, spent 23.30 hours at an hourly rate of $225 for a total of $5,242.50 in fees; and (3) Christian Koerner, a paralegal/law clerk of the firm, spent 64.50 hours at an hourly rate of $175 for a total of $11,287.50.  Plaintiff has also submitted documentation supporting a total of $1,339.42 in unreimbursed expenses.  The sum of Plaintiff's counsel's total lodestar ($77,110) and unreimbursed expenses ($1,339.42) exceed the

$65,000 sought by way of the instant motion.[14]

Because the FCRA is a statutory fee-shifting statute, Plaintiff urges the Court to award the $65,000 sought based on Plaintiff's counsel's lodestar. Defendants do not contest Plaintiff's motion, the granting of which would result in attorneys' fees that exceed the $48,820 in gift card recovery for class members. Of course, Defendants' apathy on this issue is not unusual because their primary interest is in buying peace. See Pet Food Prods., 2010 WL 5127661, at *20 (Weis, J., concurring in part and dissenting in part) (describing "the parties' disincentives to invoke judicial scrutiny of fee awards").

A.    The Nature of the Court's Review

In determining whether to award counsel attorneys' fees, the court "must conduct a 'thorough judicial review' of class counsels' request for attorneys' fees." Perry, 229 F.R.D. at 118. The court, as both Rule 23 and the applicable statute entitling counsel to attorneys' fees in this case provide, is tasked with ensuring that the attorneys' fees sought are reasonable. See Fed. R. Civ. P. 23(h) ("In a certified class

---

[14]    Plaintiff represents that, due to additional briefing requested by and submitted to the Court, (see doc. no. 35), the total sum for fees and expenses has increased to approximately $86,000 since the motion for attorneys' fees was filed. (See Pl.'s Additional Mem. Of Law, at 6-7 n.3.) The request for an award of $65,000 remains unchanged.

action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement); 15 U.S.C. § 1681n(a)(3) (providing "the costs of the action together with reasonable attorney's fees as determined by the court" are recoverable).  As noted, institutional concerns of fairness are necessarily implicated in this inquiry.  See Gen. Motors Corp., 55 F.3d at 820.

As explained further infra, courts may fix attorneys' fees by reference to counsel's total lodestar.  Of course, in cases where it is understood counsel's compensation will not be satisfied by a paying client, adherence to this methodology enables counsel to essentially define the value of the services provided.  This could lead to a logically unsettling and potentially problematic result:  an award of attorneys' fees that greatly exceeds the total monetary recovery for the class.[15] After all, success is intimately tied to reasonableness and this outcome would not generally be viewed as a successful one in an ordinary business transaction based on market forces.

Certain consumer cases are different.  The statute at issue in this case is illustrative:  it is a remedial statute which contemplates relatively low recovery and has a fee shifting provision for attorneys' fees.  See 15 U.S.C. § 1681n(a).

---

[15]    In this case, the attorneys' fees exceed the total class recovery even assuming that the gift cards are equivalent in value to cash.

Assuredly, Congress envisioned that the amount of attorneys' fees would exceed the total class recovery in certain consumer class action suits and, indeed, that this might be the likely outcome in cases like the one before the Court.  On the other hand, Congress did not issue class counsel a blank check to cash for services rendered at the end of a consumer class action suit; the Court must assess reasonableness.  This task requires the Court to reconcile the legislatively recognized interest in compensating attorneys who take on such cases with the Court's foundational duty to preserve the integrity of the class action process.

Therefore, where the Court is called to make an award on the basis of counsel's lodestar and expenses in connection with a class action settlement and this sum exceeds the class' recovery, the Court believes it must be particularly vigilant in evaluating the reasonableness of attorneys' fees.

B.    <u>Methods to Determine Whether to Award Attorneys' Fees</u>

Broadly speaking, courts in the Third Circuit have used two methods to determine whether attorneys' fees are warranted in a class action—the "lodestar method" and the "percentage of recovery" method.  <u>See</u> <u>Prudential</u>, 148 F.3d at 333 (describing the two methods).  The lodestar method has two separate components, both of which must be "reasonable":  (1)  the rate

charged; and (2) the total hours spent.  See Ursic v. Bethlehem

Mines, 719 F.2d 670, 676 (3d Cir. 1983) (describing a "twin

inquiry into reasonableness:  a reasonable hourly rate and a

determination of whether it was reasonable to expend the number

of hours in a particular case").  Courts applying the lodestar

method are to "multipl[y] the number of hours reasonably worked

by a reasonable hourly rate."  Perry, 229 F.R.D. at 118-19.

Whether the rate charged is reasonable is determined by

"assessing the experience and skill of the prevailing party's

attorneys and by looking at the market rates in the relevant

community for lawyers of reasonably comparable skill, experience

and reputation."  Id. at 119.  The question of hours spent is

slightly more complicated.  As a starting point, this latter

determination requires the Court to exclude "hours that are

excessive, redundant, or otherwise unnecessary."  Hensley v.

Eckerhart, 461 U.S. 424, 434 (1983); see Ursic, 719 F.2d at 676.

In addition to questioning whether the hours spent are

reasonable, this component of the lodestar method necessitates

inquiry into who billed the hours.  Just as "[a] Michelangelo

should not charge Sistine Chapel rates for painting a farmer's

barn," counsel should not be using "highly priced talent for

matters easily delegable to non-professionals or less experienced

associates."  Ursic, 719 F.2d at 677.

In contrast to the lodestar method, the percentage of

recovery method, "awards class counsel a fixed portion of the settlement fund." Perry, 229 F.R.D. at 119. Under the percentage of recovery method, the determination of fees is assessed by "examining the size of the settlement fund, any objections to the fee request, counsel's skill and efficiency, the complexity of the litigation and the amount of time counsel spent on it, the risk of nonpayment, and awards in similar cases." Perry, 229 F.R.D. at 119; see Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The Third Circuit has instructed that the lodestar method is typically favored in "statutory fee shifting cases" insofar as it "assures counsel undertaking socially beneficial litigation . . . an adequate fee irrespective of the monetary value of the final relief achieved for the class." Gen. Motors Corp., 55 F.3d at 821. Thus, because the damages provision of the FCRA includes such a mechanism for attorneys fees, courts evaluating attorneys' fees following settlements of FCRA actions have often employed the lodestar method. See, e.g., Barel v. Bank of Am., 255 F.R.D. 393, 403 (E.D. Pa. 2009) (beginning analysis by conducting a lodestar analysis); see also Perry, 229 F.R.D. at 120-21 (same).

However, the Third Circuit has cited the prudence of cross-checking the lodestar result against that which would be suggested under the percentage of recovery method, see Gen.

Motors Corp., 55 F.3d at 821 (noting there is "an advantage to using the alternative method to double check the fee"), and courts applying lodestar method in FCRA cases often do so.  See, e.g., Barel, 255 F.R.D. at 404 (performing a cross-check using the percentage of recovery method); see also Perry, 229 F.R.D. at 123 (same).  Of course, "the district court has wide discretion to decide which method of fee calculation to apply" as neither method is "mandatory."  Lake v. First Nationwide Bank, 900 F. Supp. 726, 734 (E.D. Pa. 1995) (Robreno, J.).

C.    Application

        Because this case involves a statutory fee shifting provision, the Court begins its analysis with the two-pronged lodestar method.  See Gen. Motors Corp., 55 F.3d at 821.  In exercising the exacting scrutiny befitting a case of this nature, the Court has carefully reviewed Plaintiff's motion, including counsel's time sheets and the accompanying affidavit averring that the rates charged—here, $650 for a partner and $175-$225 for paralegal/law clerks—are the same as those charged for legal services in other class action cases of similar complexity.  The Court has also reviewed class counsel's biography, which details his extensive experience in consumer class action cases.

        After reviewing this record, the Court finds the rates charged to be reasonable.  See Serrano v. Sterling Testing Sys.,

Inc., 711 F. Supp. 2d 402, 422 (E.D. Pa. 2010) (deeming hourly rates between $290 and $650 for consumer class action attorneys as "within the range charged by attorneys with comparable experience levels"); id. n.13 ("The rates charged for law clerks and paralegals are between $125.00/hour and $225.00/hour, which is reasonable under the circumstances.").  The total time spent is also reasonable for a case of this nature, and the billing sheets reflect that the work was properly allocated to reduce costs.  Indeed, the bulk of the legal research and factual discovery was completed by paralegal/law clerks.  Under these circumstances, the Court concludes the $65,000 Plaintiff's seeks is warranted under the lodestar method.

Of course, cross-checking this figure against the percentage of recovery method may well suggest a different result given that the attorneys' fees are greater than the total class recovery.  Cognizant of this, Plaintiff argues that a cross-check is inappropriate in a statutory fee-shifting case.  The Court rejects the notion that a cross-check is universally unnecessary in a statutory fee-shifting case.  However, the cross-check's utility is limited in consumer cases where, as in this case, the total class recovery is relatively small.  Moreover, the Court is persuaded that class counsel worked efficiently to secure a favorable outcome for the class.  Thus, the fact that a cross-check might militate against awarding $65,000 is not fatal to

Plaintiff's motion under the facts of this case.  See Gen. Motors Corp., 55 F.3d at 821.

Consequently, the Court finds the attorneys' fees sought are reasonable and concludes that such fees do not offend what is, with one exception,[16] an otherwise fair settlement. While the Court has the abovementioned reservations about what the lodestar methodology might permit if unchecked, this is not—despite what the disparity between the fees sought and the total class recovery could reasonably denote—a case where the class action settlement process has been abused.  The Court will therefore grant Plaintiff's motion for attorneys' fees in the amount of $65,000.

**VI.  CONCLUSION**

For the foregoing reasons, Plaintiff's motion for final approval of class action settlement will be granted in part and denied in part; it will be denied to the extent it seeks more than $1,000 for Plaintiff's services as the class representative, but otherwise granted.  Plaintiff's motion for attorneys' fees will be granted.  An appropriate Order will follow.

---

[16]     As explained in Part IV, the representation award the settlement permitted Plaintiff to seek without opposition is excessive.